# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **MARIAH MICHAELS**<br>6361 Springwood Road<br>Parma Heights, OH 44130<br><br>       Plaintiff,<br><br>       v.<br><br>**NEWREZ, LLC d/b/a**<br>**SHELLPOINT MORTGAGE SERVICING**,<br>℅ Corporation Service Company, Registered Agent<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>And<br><br>**THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-84, MORTGAGE PASS-THROUGH TRUST CERTIFICATES, SERIES 2005-84**<br>℅ CT Corporation System, Registered Agent<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>       Defendant(s) | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Mariah Michaels and for her Complaint for Damages against Defendants NewRez LLC d/b/a Shellpoint Mortgage Servicing and The Bank of New York Mellon, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-84, Mortgage Pass-Through Trust Certificates, Series 2005-84 states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Mariah Michaels ("Plaintiff" or "Michaels") is the owner of the real property and improvements thereupon located at and commonly known as 6361 Springwood Road, Parma Heights, OH 44130 (the "Home").

2.      Michaels currently occupies and maintains the Home as his primary, principal residence and has maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

3.      On or about October 12, 2005, Michaels executed a promissory note in the amount of $93,600.00 (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan").

4.      Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") is a mortgage servicer with its main offices located in Greenville, South Carolina.

5.      Defendant The Bank of New York Mellon, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-84, Mortgage Pass-Through Trust Certificates, Series 2005-84 ("BONY", together with Shellpoint, the "Defendants") is the current owner of the Loan.

6.      Shellpoint began servicing the loan on behalf of BONY on October 16, 2021.

7.      Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. ("RESPA") and the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.*

8.      This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

9.      Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF STATUTORY CAUSES OF ACTION

10.     This action is filed to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

11.     The CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010), specifically the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

12.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute '*servicing,*' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

13.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

14.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

15.     Shellpoint is subject to the aforesaid regulations and is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

16.     Michaels asserts a claim for relief against Shellpoint for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

17.     Michaels has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

18.     Michaels is a "consumer", as that term is defined by 15 U.S.C. § 1692a(3), and a person affected by a violation of the FDCPA, and other violations, with standing to bring this claim under 15 U.S.C. § 1692.

19.     Shellpoint is a "debt collector" as defined by 15 U.S.C. § 1692a(6) as Shellpoint began collecting on the Loan when the Loan was past due and in default—as the Loan had not yet been permanently modified—and as Shellpoint otherwise treated the Loan as if it were in default. *See*, *infra*.

20.     The Loan is a "debt" as that term is defined by the FDCPA as the underlying debt sought to be collected by Shellpoint was a residential mortgage the primary purpose of which was for personal, family, or household use.

21.     Michaels has a private right of action under the FDCPA pursuant to 15 U.S.C. § 1692k, for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

22.     Michaels further asserts a state law statutory claim for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

23.     Michaels is a "buyer" as defined by R.C.1322.01(H), as he is an individual whose loan is serviced by a mortgage servicer, Shellpoint.

24.     Shellpoint is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(AA).

25.     Shellpoint is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

## STATEMENT OF FACTS

26.     In the spring of 2022 Michaels applied and was approved for Homeowners' Assistance Funds (the "HAF funds") through the Ohio Housing Finance Agency.

27.     Shellpoint received the HAF funds in multiple parts: (1) a lump sum payment on or about June 10, 2022 to cure all existing delinquencies on the Loan, (2) a payment on July 13, 2022 for the June 1, 2022 contractual payment, (3) a payment on July 29, 2022 for the July 1, 2022 contractual payment, (4) a payment on August 15, 2022 for the August 1, 2022 contractual payment, (5) a payment on September 23, 2022 for the payment of September 1, 2022 contractual payment, as well as payments in October 2022 through December 2022 for the contractual payments due for October 2022, November 2022 and December 2022.

28.     On September 9, 2022 Notice of Error sent pursuant to 12 C.F.R. § 1024.35(b)(2) in which Michaels requested Shellpoint investigate several errors she believed existed in the August 18, 2022 Periodic Billing Statement after the application of the HAF funds which cured all of her existing delinquencies on the Loan including (1) notations of overdue fees and charges of $200.00, (2) notations of overdue payments totaling $1,177.85, and (3) a notation of a total balance due for the September 1, 2022 contractual payment on the Loan of $2,055.70. *See* **Exhibit 1**.

29.     On or about October 21, 2022 Shellpoint sent a substantive response to the September 9, 2022 Notice of Error, a copy of which is attached as part of Exhibit 2, which included in part a payment history showing all disbursements of the HAF funds received at that point.

30.     On November 23, 2022, after reviewing the October 21, 2022 response and documentation provided by Shellpoint, Michaels, through Counsel, sent correspondence to Shellpoint captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(2) for failure to properly apply accepted payments to principal, interest, escrow or other charges under the terms of the mortgage loan and applicable law; and Notice of error pursuant to 12 C.F.R § 1024.35(b)(5) and 12 §§ U.S.C. 2605(k)(l)(C) and 2605(k)(l)(E) for imposing fees for which a servicer had no reasonable basis to impose" ("NOE #1") via Certified Mail [Tracking No. 7021 0950 0000 3830 0972] to Shellpoint at its designated address for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"). *See*, a copy of NOE #1, without original enclosures, along with the Tracking Information for the same obtained from the USPS's website (www.usps.com), attached as **Exhibit 2 (NOE #1)** and **Exhibit 3 (Tracking Information)** respectively.

31.     Through NOE #1, Michaels alleged that Shellpoint committed a number of errors related to the servicing of the Loan including, but not limited to:

    a.  Improperly assessing a $200.00 approval fee on August 1, 2022 which was also assessed on the loan on January 18, 2022;

    b.  Improperly assessing a $500.00 title cost disbursement on June 30, 2022 which was also assessed on the loan on January 18, 2022; and

    c.  Failing to apply one (1) of the HAF payments of $667.85 based upon a review of the Loan History Statement and the on-going periodic Billing Statements.

*See* Exhibit 2 at pp. 1-2

32.     Shellpoint received NOE #1 at its Designated Address on November 29, 2022. *See* Exhibit 3

33.     To date neither Michaels nor her Counsel have received a response to NOE #1.

34.     On or about December 20, 2022 Michaels received a periodic billing statement from Shellpoint dated December 18, 2022, a copy of which is attached as Exhibit 4 to this Complaint.

35.     Michaels was upset when reviewing Exhibit 4 that despite the on-going receipt of the HAF Funds, Exhibit 1, and the pending NOE #1, Shellpoint was still indicating there were overdue payments of $1,351.09. *See* Exhibit 4.

36.     On or about January 20, 2023 Michaels received a Notice of Default from Shellpoint, a copy of which is attached as Exhibit 5 to this Complaint.

37.     In Exhibit 5 Shellpoint notified Michaels that her loan was delinquent in the amount of $2,015.56 and that amount must be paid by February 21, 2023 or else BONY, through Shellpoint, may exercise its right to commence foreclosure proceedings. *See* Exhibit 5.

38.     The $2,015.56 in Exhibit 5 included delinquent payments of $664.47 for the December 1, 2022 contractual payment on the Loan which is a payment that Shellpoint received HAF funds to pay. *Id.*

## IMPACT UPON AND DAMAGES SUFFERED BY MICHAELS

39.     Shellpoint has refused to investigate NOE #1, improperly applied funds received for contractual payments on the Loan, improperly assessed multiple fees, and has explicitly threatened to foreclose on her Home despite receipt of the HAF Funds.

40.     Shellpoint's improper actions have caused Michaels to suffer from actual damages, including but not limited to:

    a.   The misapplication of at least $664.47 in HAF funds which has delayed Michaels's ability to resume contractual payments;

    b.   The incursion of $700.00 in improper fees and costs on the Loan;

    c.   The legal fees, costs, and expenses to submit NOE #1 in a good faith attempt to amicably resolve this matter or to have Shellpoint mitigate the harm caused to Michaels to which Michaels did not receive any response;

    d.   Unwarranted harm to her credit rating and a significant delay in the rehabilitation of her credit for which she has not received proper redress from Shellpoint; and

    e.   Severe emotional distress driven by this wrongfully claimed delinquency and by justified fear that such wrongfully claimed delinquency would be the start of a slippery slope leading to the foreclosure sale of her Home unless Michaels pays amounts and fees which are not warranted which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY SHELLPOINT**

41. Shellpoint's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

42. Shellpoint has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

43. Plaintiff has reviewed the CFPB's consumer complaint database and have identified narratives asserting that Shellpoint engaged in similar conduct against other borrowers. In particular, Plaintiff has reviewed the seventeen (17) consumer complaints attached hereto and identified as **Exhibit 6**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Shellpoint has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

**COUNT ONE: AGAINST SHELLPOINT**
**VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)**

**(Failure to timely acknowledge and properly respond to NOE #1)**

44. Michaels restates and incorporates all of the statements and allegations contained in paragraphs 1 through 43 in their entirety, as if fully rewritten herein.

45. "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

46.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

47.     A servicer must respond to a notice of error by either:

(A)  Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)  Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

48.     A servicer must respond to a notice of error in compliance with 12 C.F.R. § 1024.35(e)(1):

(A)  Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B)  Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C)  For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

49.     "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

50.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

51.     NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 2.

52.     Shellpoint received NOE #1 at the Designated Address on or before November 29, 2022 *See*, Exhibit 3.

53.     To date, Shellpoint has not sent any written correspondence to Michaels or his counsel containing or consisting of a substantive response to NOE #1, nor has Michaels or his counsel received any such correspondence.

54.     Shellpoint's failure to timely and properly respond to NOE #1 by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1 constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Michaels has suffered actual damages as detailed, *supra*, including, but not limited to legal fees, expenses, and costs to prepare this Complaint. *See*, Exhibit 2.

55.     Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for Michaels's rights.

56.     Shellpoint's conduct as pled, *supra*, shows a conscious disregard for Michaels's rights.

57.     As a result of Shellpoint's actions, Shellpoint is liable to Michaels for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

58.     Additionally, Michaels requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**COUNT TWO: AGAINST SHELLPOINT**
**VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.***

59.     Michaels restates and incorporates all of the statements and allegations contained in paragraphs 1 through 58 in their entirety, as if fully rewritten herein.

60.     Michaels is a "consumer" as he is a natural person who is obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

61.     The Loan is a "debt" as it is an obligation or alleged obligation of Michaels to pay money arising out of a transaction primarily for personal, family, or household purposes—the financing of the Home. 15 U.S.C. § 1692a(5).

62.     Shellpoint is a "debt collector" because it regularly collects or attempts to collect on the Loan and other loans owed to creditors, such as the Trust. 15 U.S.C. § 1692a(6).

63.     When Shellpoint acquired the servicing rights to the Loan on or around October 16, 2021, the Loan was in contractual default. *See*, 15 U.S.C. § 1692a(6)(F)(iii).

64.     Shellpoint, through, *inter alia*, mortgage statements and correspondence has treated the Loan as if it was in default. *See*, Exhibit 3.

65.     The FDCPA prohibits false, deceptive, or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. The FDCPA provides examples of conduct that violate the provision, such as prohibiting the use of:

   a.   False representations of the character, amount, or legal status of any debt (15 U.S.C. § 1692e(2)(A));

    b.   The threat to take any action that cannot legally be taken (15 U.S.C. § 1692e(5)); and,

    c.   False representations or deceptive means to collect or attempt to collect any debt (15 U.S.C. § 1692e(10)).

66.    Shellpoint violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10), by falsely representing in the notice of default that the Loan was past due for multiple payments wrongfully threatening to file a foreclosure action against Michaels, and falsely representing that Michaels owed default servicing fees and other similar fees and charges imposed for which Shellpoint had no reasonable basis to impose or collect, and by refusing to correct its erroneous actions after having been put on notice of the same. *See*, Exhibit 4 and 6.

67.    The FDCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

68.    Shellpoint violated 15 U.S.C. § 1692f through its actions sending correspondence to Michaels wrongfully claimed the amount of default on the Loan.. *See*, Exhibit 4 and 6.

69.    Shellpoint's actions have caused Michaels to suffer actual damages, further described, *supra*, including but not limited to requiring Michaels to incur attorneys' fees and costs related to the preparation and mailing of NOE #1 to attempt to have Shellpoint correct its erroneous conduct.

70.    As a result of Shellpoint's conduct, Michaels suffered extreme emotional distress driven by the fear that Shellpoint's actions would lead to an unwarranted foreclosure of and the loss of and eviction from her Home which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

71.     As a result of Shellpoint's actions, Shellpoint is liable to Michaels for actual damages and statutory damages. 15 U.S.C. § 1692k(a)(1).

72.     Additionally, Michaels requests reasonable attorneys' fees and costs incurred in connection with this action. 15 U.S.C. § 1692k(a)(3).

### COUNT THREE: AGAINST SHELLPOINT
### VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

73.     Michaels restates and incorporates all of the statements and allegations contained in paragraphs 1 through 72 in their entirety, as if fully rewritten herein.

74.     "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

75.     Shellpoint, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

76.     Shellpoint is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM.803970. R.C. 1322.01(HH).

77.     Michaels is a buyer, as his Loan is serviced by Shellpoint, a mortgage servicer. R.C. 1322.01(H).

78.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.* cannot "[e]ngage in conduct that constitutes improper, fraudulent, or dishonest dealings." R.C. 1322.40(C).

79.     Shellpoint's conduct in, *inter alia*, failing to provide proper responses to NOE #1, failing to timely correct the errors asserted through NOE #1, wrongfully declaring the Loan to be

in default and threatening foreclosure, and charging improper fees and charges to the Loan, constitute violations of R.C. 1322.40(C).

80.     Shellpoint's conduct caused Michaels to suffer actual damages, as further described, *supra*.

81.     As a result of Shellpoint's conduct, Shellpoint is liable to Michaels for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.52.

82.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

(3)   Act with reasonable skill, care, and diligence; [and]
(4)   Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

83.     A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

84.     Shellpoint's conduct in, *inter alia*, failing to provide proper responses to NOE #1, failing to timely correct the errors asserted through NOE #1, wrongfully declaring the Loan to be in default and threatening foreclosure, and charging improper fees and charges to the Loan, constitutes violations of R.C. 1322.45(A)(3)-(4).

85.     As a result of Shellpoint's conduct, Shellpoint is liable to Michaels for actual damages, as further described, *supra*, as well as reasonable attorneys' fees and costs incurred in connection with this action and punitive damages. R.C. 1322.45(D).

## COUNT FOUR: AGAINST BONY
## VIOLATIONS OF TILA, 12 C.F.R. §1026.41
### [Violation of TILA - failure to send correct periodic billing statements]

86.     Michaels restates and incorporates all of the statements and allegations contained in paragraphs 1 through 85 in their entirety, as if fully rewritten herein.

87.     12 C.F.R. §1026.41(a) requires that a servicer must provide the consumer a periodic statement meeting the requirements of 12 C.F.R. §1026.41 for each billing cycle of the transaction.

88.     12 C.F.R. §1026.41(d) provides that the required periodic billing statements shall include information including the amount due, an explanation of the amount due, delinquency information, and account information including the current outstanding principal balance and interest rate.

89.     Michaels is a consumer as that term is defined by TILA.

90.     From August 1, 2022 to the present (May 1, 2022), Shellpoint, acting on behalf of BONY, has caused ten (10) periodic billing statements to be sent to Michaels.

91.     Based on the allegations above and Exhibits 1, 2, 3, and 4, Shellpoint, acting on behalf of BONY, sent information on those statements related to the imposition of $700.00 in fees which it knew or should have known was facially inaccurate.

92.     Based on the allegation above and Exhibits 1 through 5, Shellpoint, acting on behalf of BONY, sent information on the statements from December 2022 to the present which indicated an amount of contractual delinquency which it knew or should have known was facially inaccurate.

93.     The knowing failure to transmit accurate and truthful information through the periodic billing statements wholly defeated the purpose of such statements, that is, to properly provide accurate disclosures to the Plaintiff as to his obligations on the loan.

94.     BONY's actions in causing or otherwise facilitating these monthly statements to be sent out with facially inaccurate information is a violation of TILA which caused Plaintiff to be

harmed as she never knew what the correct balance of the loan was and caused her continued concern that her payments were never being applied properly. The receipt of these incorrect statements also led Michaels to take the reasonable step to send NOE #1.

95.     BONY's actions are a pattern and practice in conscious disregard of Michaels's rights.

96.     As a result of the above violations described herein, BONY is liable to Michaels for statutory damages for ten (10) separate violations, actual damages, and reasonable attorneys' fees and costs. 15 U.S.C. §§ 1640(a) and 1641(e).

**COUNT FIVE: AGAINST BONY**
**BREACH OF CONTRACT**

97.     Michaels restates and incorporates all of the statements and allegations contained in paragraphs 1 through 96 in their entirety, as if fully rewritten herein.

98.     The Loan is an enforceable contract between Michaels and BONY as for all times relevant to this Complaint, Michaels tendered funds to BONY's servicer, Shellpoint, who then remitted the funds to BONY.

99.     The Loan includes a Mortgage which is the standard Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS.  Pursuant to Paragraph 1 of the Mortgage, "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3."

100.     Based upon the allegations above, *supra*, Michaels paid all contractual payments due on the Loan through the payment due for December 1, 2022.

101.    Based on the allegations above, *supra*, and Exhibits 4 and 5, Shellpoint on behalf of BONY received at least $667.85 in contractual mortgage payments which were never properly accounted for.

102.    Based on the allegations above, *supra*, and Exhibits 4 and 5 Shellpoint on behalf of BONY has taken funds directly earmarked to go to the Loan accounts and applied those funds to other balances due on the loan and/or in an improper manner as required under the Note and Mortgage.

103.    BONY has breached the contract.  This breach is one of bad faith as demonstrated by the allegations, *supra*.  BONY failed to exercise reasonable diligence in the servicing of the Loan including its fiduciary duty to handle payments of principal, interest, and escrow properly. BONY, through Shellpoint, breached these duties by failing to apply the payments tendered by Michaels.

104.    Michaels has breached the Mortgage contract and Michaels is entitled to actual damages of at least $667.85 and in a total amount to be determined at trial.

## COUNT SIX: AGAINST BOTH DEFENDANTS
## CONVERSION

105.    Michaels restates and incorporates all of the statements and allegations contained in paragraphs 1 through 104 in their entirety, as if fully rewritten herein.

106.    Based on the allegations above Shellpoint, on behalf of BONY, converted $667.81 of Michaels's personal property by failing to apply tendered funds to the balances due on the Loan.

107.    Shellpoint's actions, on behalf of BONY, are wrongful acts that deprived Daniels of his rightful property.

108.    Shellpoint, on behalf of BONY, engaged in the unauthorized assumption and exercise of the right of dominion over funds of Michaels to the exclusion of his rights.

109.    Thus, Michaels was denied access to her funds and her right to dominion over her personal property was wrongfully violated by Shellpoint, on behalf of BONY.

110.    Shellpoint's conversion of personal property, on behalf of BONY, from Michaels was accompanied by outrageous and aggravated conduct, as Shellpoint failed to correct the Loan's accounting after receipt of the NOEs.

111.    Both Shellpoint's and BONY's failure to correct the Loan's accounting represents fraudulent, willful, or wanton conduct that demonstrated indifference to the rights and safety of others; and each Defendant knew or should have known that its conduct was reasonably likely to result in harm to Daniels, as the Defendants, through Shellpoint has threatened Michaels with foreclosure.

112.    Michaels is entitled to recover compensatory and punitive damages as a result of the conversion of property by each of the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Mariah Michaels respectfully requests that this Court enter judgment an Order granting Judgment in her favor against Defendant NewRez LLC and Defendant The Bank of New York Mellon, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-84, Mortgage Pass-Through Trust Certificates, Series 2005-84 as follows:

A.      For an award of actual damages of $1,364.47 and in a total amount to be determined at trial against Defendant NewRez LLC for the allegations contained in Counts One through Three and/or alternatively in Count Six, as applicable;

B.      For an award of actual damages of actual damages $664.47 and in a total amount to be determined at trial against Defendant BONY for the allegations contained in Counts Four and Five and/or alternatively in Count Six, as applicable;

C.      For an award of statutory damages against Defendant NewRez LLC of Two Thousand Dollars ($2,000.00) for each violation of RESPA contained in Count One;

D.      For an award of statutory damages against Defendant NewRez LCC of One Thousand Dollars ($1,000.00) for the violations of the FDCPA contained in Count Two;

E.      For an award of statutory damages against Defendant BONY of at least Four Hundred Dollars ($400.00) but not to exceed Four Thousand Dollars ($4,000.00) for each of the ten (10) violations of TILA contained in Count Four;

F.      For an award of punitive damages against Defendant NewRez LLC in a total amount to be determined at trial for the allegations contained in Count Three;

G.      For an award of punitive damages, as applicable, jointly and severally against Defendant NewRez LLC and Defendant BONY for the allegations contained in Count Six;

H.      For an award of Plaintiff's reasonable attorneys' fees and costs against the Defendants, as applicable, as to the allegations contained in Counts One through Six; and

I.      For such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Brian D. Flick, Esq.*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com

*Counsel for Plaintiff Mariah Michaels*

## JURY DEMAND

Plaintiff Mariah Michaels hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Brian D. Flick*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
Michael A. Smith Jr. (0097147)
DannLaw
*Counsel for Plaintiff Mariah Michaels*